In re James Peter IRVINE, Sr. and Sharon L. Irvine, Debtors.

Bankruptcy No. 95 B 52312.

United States Bankruptcy Court,
N.D. Illinois,
Western Division.

Feb. 26, 1996.

Eugene R. Pigatti, Rockford, IL, for Sears.

Thomas H. Senneff, Fulton, IL, who wisely considered the matter too insignificant to attend the hearing, for Debtors, James Peter Sr. and Sharon l. Irvine.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the Motion of Sears, Roebuck and Co. ("Sears") to Compel and Extend the Time Within Which To File An Adversary Proceedings [sic] ("Motion").[1]  Attorney Eugene R. Pigatti represents Sears. The Debtors, James Peter Sr. and Sharon L. Irvine, are represented by Attorney Thomas H. Senneff, who wisely considered the matter too insignificant to attend the hearing.

### BACKGROUND

The Debtors filed their Voluntary Petition under Chapter 7 of the Bankruptcy Code ("Code") on October 25, 1995. Along with the various schedules the Debtors also filed their Statement of Intention in a timely fashion. Sears was not included in the Statement of Intention.

Sears' Motion alleges that it holds a security interest in an air conditioner, vacuum, tools and a table saw. Sears further alleges that in the Debtors' Statement of Intention, the Debtors did not state their intent with regards to the aforementioned personal property, and therefore failed to comply with Section 521(2).

### DISCUSSION

Section 521(2) requires a debtor to file with the Clerk a written Statement of Intention within 30 days after the date of the filing of the Voluntary Petition; and to perform the stated intention within 45 days after the filing of a notice of intent. 11 U.S.C. § 521(2)(A) & (B).[2]

While the clear language of Section 521(2) indicates that the requirements on the part of the debtor are mandatory, the purpose behind the section is one of notice. *In re Tameling*, 173 B.R. 627, 628 (Bankr. W.D.Mich.1994) (*citing In re Bracamortes*, 166 B.R. 160, 162 (Bankr.S.D.Cal.1994)); *see also Matter of Edwards*, 901 F.2d 1383, 1387 (7th Cir.1990) (section 521 requires debtor to choose to reaffirm, redeem or surrender secured property). The statute is "intended to give creditors information regarding their property without the hassle of having to reach the debtor's attorney or engage in unauthorized communications with a pro se debtor." *Bracamortes*, 166 B.R. at 162 (citation omitted). Furthermore, Section 521(2)(C) suggests that the time periods within Sections 521(2)(A) and (B) are nothing more than procedural guidelines. *Id.*

\*     \*     \*     \*     \*     \*

The all-important question is what happens if the Debtors do not comply with Section 521(2). Here, even if the Court were to order the Debtors to do so, it would be impossible for the Debtors to comply with the order because the time limits have run. Furthermore, there is no statutory sanction for failure to comply with Sections 521(2)(A) and (B).[3]  To hold a debtor in contempt for

---

1. The portion of Sears' Motion to Extend the Time Within Which to File an Adversary Proceeding was withdrawn. Counsel for Sears indicated that it was brought inadvertently.

2. Section 521(2) states:

   The debtor shall—

   .     .     .     .     .

   (2) if an individual debtor's schedules of assets and liabilities includes consumer debts which are secured by property of the estate—
     (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intentions with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
     (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
     (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title[.]
   11 U.S.C. § 521(2).

3. Arguably, the Court could fall back on its powers under Section 105(a). The Court agrees with the *Tameling* court in declining to invoke its discretion under Section 105(a) to order the

lack of compliance is "absurd and akin to swatting a mosquito with a sledgehammer." *Tameling*, 173 B.R. at 628. Moreover, to properly decide the merits of a Motion to Compel, the parties might first have to litigate the potentially contentious issue of whether the creditor was indeed secured and thereby had standing to bring the motion.

The most logical and legally sensible answer to this question is that the Debtors' failure to perform the duties imposed within Section 521(2) provides grounds for vacating the automatic stay, and that is a remedy Sears may pursue if it chooses to do so, and, indeed, if it is necessary to do so.[4] This remedy is in unison with the several other courts addressing similar motions involving Sears. *See In re Weir*, 173 B.R. 682, 693 (Bankr.E.D.Cal.1994);[5] *Tameling*, 173 B.R. at 628–29; *Bracamortes*, 166 B.R. at 162.[6] *But see In re Green*, 119 B.R. 72, 73–74 (Bankr.D.Md.1990) (dismissing the case under Section 707(a)(1) for failure to comply with court order requiring debtor to file statement of intention).

\*     \*     \*     \*     \*     \*

The final question, and one the Court cannot answer, is why Sears would want to incur legal fees to prosecute a Motion to Compel under Section 521(2). The Court can only hypothesize. Is it in the hope that a Motion to Compel, for which there is no filing fee, will accomplish the same as a Motion to Vacate Stay, for which there is a $60.00 filing fee? Or is Sears' strategy in bringing such Motions a "sophisticated" ploy, arguably legitimate, to pressure debtors into reaffirmation agreements or to persuade them to voluntarily surrender the property without further litigation? Whatever Sears' motivation, the proper remedy is to have the

Debtors to comply with these "garden variety" motions. *Tameling*, 173 B.R. at 628.

4. The Motion would not be necessary if the automatic stay has already been terminated, such as by entry of the Discharge Order. *See* 11 U.S.C. § 362(c).

5. The *Weir* court provides a comprehensive overview of Section 521(2), including the legislative

stay vacated. Therefore, Sears' Motion to Compel should be denied.

SEE ORDER.

### *ORDER*

In accordance with the Memorandum Opinion filed herewith it is

ORDERED that Sears, Roebuck and Co.'s Motion to Compel is DENIED.

history and a discussion of the possible remedies available for noncompliance.

6. Alternatively, *Bracamortes* found that the creditor could wait until the discharge was granted and then pursue its in rem rights against the collateral under state law. *Bracamortes*, 166 B.R. at 162 (citations omitted).